**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:

One Shot Ventures LLC,

Plaintiff,

v.

Bryan Bros, LLC d/b/a Bryan Bros Golf, and
Provisions Group, LLC.

Defendants.

---

**COMPLAINT**

---

One Shot Ventures LLC ("OSV" or "Plaintiff"), through its attorneys, Fisher & Phillips LLP, files this Complaint against Bryan Bros, LLC d/b/a Bryan Bros Golf, ("Bryan Bros Golf"), and Provisions Group, LLC ("Provisions Group") (collectively, "Defendants") and alleges as follows:

## NATURE OF THE CASE

This case is about a business opportunity stolen by the very people who promised to help build it. Kevin Baum of OSV conceived an innovative new golf entertainment venture, reduced his concept to a detailed business plan, and brought it to Wesley Bryan of Bryan Bros Golf and Joe Gilliland of Provisions Group because they had relationships and experience to help maximize the success of his venture. Before OSV disclosed the details, however, it required Defendants to sign written confidentiality agreements. Those agreements imposed a simple restriction: Defendants could use OSV's confidential information only for the contemplated business venture with OSV—not for themselves, not for competing ventures, and not to OSV's detriment.

Defendants eagerly accepted those terms. They told Mr. Baum at multiple stages of the process that they were "all in," that they were "very excited to continue," and that they were "very in on this league." Relying on those assurances, OSV continued to share increasingly detailed information about the venture's structure, competition formats, ownership model, participants, purses, content strategy, sponsorship opportunities, economics, and potential relationships within golf and continued its efforts to bring the league to life. For months, Defendants encouraged OSV to keep developing the venture and continued representing to Mr. Baum that they intended to pursue it with OSV.

But that is not what happened. While continuing to assure Mr. Baum that they remained interested in building a venture together, Defendants took OSV's confidential information outside that relationship, shared it with others, and used it to advance golf ventures from which OSV was excluded. One of those ventures—Your Golf Tour ("YGT")—incorporates material components of the venture's architecture OSV had disclosed to Defendants in confidence. Defendants thus obtained the benefit of OSV's work and business plan, while leaving behind the person and company that created them. OSV brings this action to recover for that betrayal of trust and the unauthorized use of the confidential business information Defendants promised to protect.

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff One Shot Ventures LLC is a Colorado limited liability company, with its principal place of business at 11370 Clove Way, Parker, Colorado 80134. Mr. Baum is OSV's sole member, and is a citizen of the State of Colorado, residing at 11370 Clove Way, Parker, Colorado 80134.

2. Defendant Bryan Bros, LLC d/b/a Bryan Bros Golf is a South Carolina limited liability company, with its principal place of business at 705 Laurel Drive, SW, Aiken, South Carolina 29801.

3. Upon information and belief, Wesley Bryan and George Bryan, IV are founders and the only members of Bryan Bros, LLC.

4. Upon information and belief, Wesley and George Bryan are citizens of South Carolina.

5. Defendant Provisions Group, LLC is a Texas limited liability company, with its principal place of business at 5748 Bernay Lane, Plano, Texas 75024.

6. Upon information and belief, Joe Gilliland is a member of Provisions Group.

7. Upon information and belief, Mr. Gilliland is a citizen of Texas.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because OSV asserts a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836. This Court has supplemental jurisdiction over OSV's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as OSV's federal claim.

9. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over Bryan Bros Golf and Provisions Group because both have sufficient minimum contacts with Colorado such that the exercise of personal jurisdiction comports with Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124(1)(a), and with constitutional due process requirements.

11. The Confidentiality and Non-Disclosure Agreement ("NDA") Defendants signed expressly provides that it is governed by Colorado law and that the parties consent to suit in the state and federal courts located in Colorado. Section F of the NDA provides:

a. "This Agreement will be interpreted in accordance with the laws of the State of Colorado, without giving effect to the principles of conflicts of law."

b. "The parties agree that to the extent either Party institutes any legal action, suit or proceeding against the other, arising under or relating to this Agreement, it shall do so in the federal courts for the State of Colorado or the state courts located in the State of Colorado, and that the Party against whom the action is instituted agrees to waive any objection to the laying of any such suit, action or proceeding in such courts."

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to OSV's claims occurred within this judicial district.

## II. FACTUAL ALLEGATIONS

13. This lawsuit arises from Defendants' unauthorized use and disclosure of OSV's confidential business plan and trade secrets to develop and profit from golf entertainment ventures that excluded OSV and its founder, Kevin Baum.

14. Mr. Baum is an entrepreneur with extensive experience in golf. Through his company, OSV, he developed an innovative concept for a fan-focused golf entertainment venture that would bring together golf content creators, professional golfers, and potentially celebrities in team and individual competitions. Mr. Baum reduced that concept to a detailed written business plan for a venture to be named One Shot Golf ("OSG"), which addressed, among other things, the

venture's competition formats, team composition and ownership structure, content and distribution strategy, fan-engagement model, sponsorship and revenue opportunities, growth plans, and potential affiliation with LIV Golf, the PGA TOUR and its related entities, and other established golf organizations.

15. To bring the concept to market, OSV sought business partners with established relationships and experience in golf-focused social media, professional golf, golf-related sponsorship, and golf's governing and commercial organizations. Those efforts ultimately connected Mr. Baum with Wesley Bryan of Bryan Bros Golf and Joe Gilliland of Provisions Group. Before disclosing OSG's detailed business plan and any other confidential, nonpublic information, OSV required each Defendant to execute an NDA. Provisions Group executed its NDA on March 5, 2024, and Bryan Bros Golf executed its NDA on March 6, 2024.

16. The NDAs broadly protected OSV's nonpublic business information, commercial strategies, ideas, methods, know-how, confidential intellectual property, and materials derived from that information. The NDAs prohibit Defendants from using OSV's confidential information for any purpose other than evaluating and pursuing the contemplated business arrangement with OSV, from using that information to OSV's detriment, and from disclosing it except to representatives who need the information for that arrangement and were bound by confidentiality obligations no less restrictive than those contained in the NDAs.

17. With the NDAs in place, OSV disclosed OSG's written business plan and other confidential details to Defendants. Over the following months, Defendants repeatedly expressed enthusiasm for the venture, represented that they and other leading golf content creators were intending to participate, and encouraged OSV to continue providing increasingly detailed

information about the proposed venture's structure, events, purses, ownership, content, economics, and strategic relationships.

18. But Defendants did not use OSV's confidential information solely to evaluate or pursue a business arrangement with OSV. Instead, upon information and belief, Defendants disclosed and used OSV's confidential information to advance their own golf entertainment ventures and relationships, including LIV Duels and YGT, while intentionally excluding OSV from the opportunities that OSV's ideas and information helped create.

19. YGT incorporates material components of OSG's confidential venture architecture that OSV disclosed to Defendants, including the integration of team and individual competitions; teams featuring content creators and professional golfers; similar concepts concerning the number, size, and composition of teams; an entertainment- and content-focused competition model; sponsorship opportunities; and a strategy for expanding the venture and its audience. Defendants launched and promoted YGT without recognizing OSV's role, compensating OSV, or obtaining authorization to use OSV's confidential information and trade secrets.

20. Defendants' conduct breached the NDAs and violated federal and Colorado trade secret laws, caused OSV substantial economic harm, and enabled Defendants to develop and profit from ventures built, in substantial part, on OSV's confidential information and trade secrets. Through this action, OSV seeks to recover its damages, including lost profits, Defendants' unjust enrichment, and all other monetary relief available under the law.

## OSV's Business and Confidential Information

21. In 2023, Mr. Baum conceived of OSG, a new fan-focused golf entertainment venture designed to blend the competitive appeal of professional golf with the established

audiences, personalities, and content-distribution platforms of leading golf content creators and celebrities.

22. Mr. Baum reduced the OSG concept to a detailed written business plan (the "OSG Business Plan") in February 2024.

23. The OSG Business Plan described a venture consisting of teams of content creators, professional golfers, and potentially celebrities, with competitions featuring team and individual competitions.

24. The OSG Business Plan further described (in greater detail than provided here) among other things:

a. the length of events to be played;
b. the number of teams who would participate in the league;
c. the composition of the teams' players;
d. the number and size of event purses;
e. competition formats designed to make the performance of participating players consequential to their teams' results;
f. the league's ownership structure;
g. the structuring of the venture's initial season's produced content, along with ideas for subsequent seasons' production and content distribution;
h. fan-engagement concepts, sponsorship opportunities, and differentiated access to players and personalities;
i. revenue opportunities, anticipated costs, and a strategy for the venture's growth and geographic expansion; and
j. a potential strategic relationship with LIV Golf, LIV team owners, the PGA TOUR, or other established golf organizations.

25. OSV does not claim exclusive rights to the general concepts of team golf, golf-content creation, sponsorship, or internet distribution. Its claimed trade secrets concern the nonpublic combination and implementation of the competition, ownership, financing, production,

distribution, and commercialization arrangements reflected in the OSG Business Plan and subsequent confidential disclosures.

26. OSG's concept is national in scope, and its ideas, formulations, and processes involve a product intended for use in interstate commerce. OSG's events were intended to be held across multiple different golf courses in multiple different states. Its sponsorships, marketing, and advertising contemplated relationships with companies and individuals involved in interstate commerce. OSG's events were to be viewed through internet and social media avenues by viewers across the United States and around the world.

27. The value of OSG's business plan arose from Mr. Baum's development and integration of distinct elements, including the venture's competition structure (including playing for purses, which put the players in stressful situations that are compelling to viewers), team composition, ownership model, content and distribution strategy, fan-engagement model, sponsorship and revenue strategy, growth plan, prospective participants, and proposed relationships with established golf organizations.

28. The OSG Business Plan and other information developed by Mr. Baum concerning OSG were not generally known to the public and provided economic value and a competitive advantage to anyone seeking to create a similar golf entertainment venture without independently investing the time, labor, resources, and industry outreach necessary to develop such a plan.

29. Mr. Baum and OSV invested substantial time, effort, and resources in developing OSG, the OSG Business Plan, and the associated business strategies, financial information, prospective relationships, and implementation plans. Such efforts included, but were by no means limited to, Mr. Baum working with a design and marketing firm, retaining and paying legal counsel

for structuring work, and engaging with event staging and production companies. Mr. Baum spent countless hours and hundreds of thousands of dollars setting up this venture.

**<u>OSV's Protection of Its Confidential Information and Trade Secrets</u>**

30. OSV did not publicly disclose the detailed and integrated business architecture contained in the OSG Business Plan and did not permit others to access or use that information without restriction.

31. Before disclosing the OSG Business Plan and related nonpublic information to Defendants, OSV required each Defendant to execute a written NDA.

32. OSV disclosed the OSG Business Plan to Defendants for the limited purpose of evaluating and pursuing a potential business arrangement concerning the creation and operation of OSG.

33. The NDAs protected OSV's information whether disclosed orally, in writing, electronically, or through other media; whether disclosed before, on, or after the NDA's effective date; and whether or not marked or otherwise identified as confidential.

34. The NDAs expressly protected business and commercial strategies, methods, techniques, ideas, discoveries, know-how, confidential intellectual property, and any notes, analyses, reports, summaries, interpretations, or other materials derived from such information.

35. At all times relevant to this Complaint, OSV took reasonable measures to preserve the secrecy and confidentiality of its confidential information and trade secrets. For example, the OSG Business Plan shared with Defendants has a watermark applied to each page indicating the document is confidential, and it is maintained on a password protected laptop. Any physical manifestations of OSV's materials, as well as electronic backups, are stored in one of two secure, hidden locations.

**Defendants' Affiliation with OSV**

36. To bring OSG to market, OSV sought business partners who could help maximize the venture with golf-focused content creators, professional golfers, sponsors, investors, and established golf organizations, including LIV Golf and the PGA TOUR.

37. Wesley Bryan is a professional golfer, co-founder, and co-owner of Bryan Bros Golf, a golf-focused media and entertainment business.

38. Joe Gilliland is the owner and co-founder of Provisions Group and has relationships with individuals and entities in the golf, content-creation, sponsorship, and business communities.

39. On February 28, 2024, Mr. Baum held an introductory call with Wesley Bryan to discuss OSG and determine whether he was interested in participating in the venture.

40. During or shortly after that call, Wesley expressed enthusiasm for OSG and told Mr. Baum that he would discuss the concept with Mr. Gilliland.

41. When Wesley Bryan and Mr. Baum spoke again on or about February 29, 2024, Mr. Bryan represented that he and Mr. Gilliland were "all in" on OSG.

42. On March 1, 2024, Mr. Baum participated in a call with Mr. Bryan and Mr. Gilliland concerning OSG.

43. During that call, Mr. Baum provided a cursory, high-level overview of the proposed venture.

44. Mr. Gilliland requested a pitch deck for the proposed venture, and agreed that the parties should enter into NDAs before Mr. Baum provided the deck.

45. Later that same day, Mr. Bryan texted Mr. Baum that he was working on a pitch deck concerning the venture and was "absolutely grinding" on it.

46. Mr. Bryan further stated that the venture "intrigued" him, that raising money by the summer would cause the internet-golf space to "explode," and that he was conducting preliminary financial analysis concerning the venture. Mr. Bryan stated that he was "starting to see it very very clear."

## The Confidentiality and Non-Disclosure Agreements

47. Because further discussions required disclosure of OSV's detailed and nonpublic business information, OSV required Defendants to enter into the NDAs before being provided with the OSG Business Plan and related information.

48. On March 5, 2024, Joe Gilliland, on behalf of Provisions Group LLC, executed an NDA (the "Provisions NDA"). A true and correct copy of the Provisions NDA is attached as **Exhibit A.**

49. On March 6, 2024, Wesley Bryan, on behalf of Bryan Bros Golf, executed a materially identical NDA (the "Bryan Bros NDA"). A true and correct copy of the Bryan Bros NDA is attached as **Exhibit B.**

50. The NDAs defined "Confidential Information" to include all nonpublic, confidential, or proprietary information disclosed by one party to the other, including business affairs, products, services, forecasts, budgets, commercial strategies, methods, techniques, ideas, discoveries, know-how, confidential intellectual property, and materials derived from that information. **Ex. A**, Sec. A; **Ex. B**, Sec. A.

51. Under the NDAs, each Defendant agreed to safeguard OSV's Confidential Information using no less than a commercially reasonable degree of care. **Ex. A**, Sec. B(a); **Ex. B,** Sec. B(a).

52. Each Defendant further agreed not to use OSV's Confidential Information, or permit it to be accessed or used, for any purpose other than the contemplated arrangement or related transactions between the parties, or otherwise in any manner detrimental to OSV. **Ex. A**, Sec. B(b); **Ex. B**, Sec. B(b).

53. Each Defendant agreed not to disclose OSV's Confidential Information except to representatives who needed to know the information for the contemplated arrangement, had been informed of its confidential nature, and were subject to confidentiality obligations no less restrictive than those contained in the NDAs. Each Defendant also agreed to be responsible for any breach of the applicable NDA by its representatives. **Ex. A,** Sec. B(c)-(d); **Ex. B,** Sec. B(c)-(d).

54. The NDAs preserved OSV's right, title, and interest in its Confidential Information and expressly provided that disclosure did not grant Defendants any assignment, option, license, or other ownership interest in that information. **Ex. A,** Sec. H; **Ex. B,** Sec. H.

**OSV's Confidential Disclosures and Defendants' Representations**

55. After Defendants executed the NDAs, OSV provided them with the OSG Business Plan and discussed additional confidential details concerning OSG, including potential revenues.

56. On March 11, 2024, Mr. Baum asked Wesley Bryan which prospective participants OSV could identify to potential sources of capital.

57. In response, Wesley Bryan represented that several leading golf content creators were "all in" on OSG and that he expected to confirm another prospective participant's interest the following day.

58. During the same exchange, Wesley Bryan represented that OSG's sponsorship revenue would ultimately generate a return, and estimated that its "hero content" could generate approximately $50,000 per video, per event, from YouTube advertising revenue alone.

59. On April 17, 2024, in an email sent in advance of a scheduled call with Defendants, Mr. Baum advised Defendants that OSV had made encouraging progress with multiple groups concerning the proposed structure and capitalization of OSG.

60. Mr. Baum further advised Defendants that OSV had already conducted outreach to potential participants and other industry contacts concerning the venture and had considered additional relationships that could expand OSG's audience and demographic reach.

61. In the April 17, 2024 email, Mr. Baum also informed Defendants that, after connecting with them, OSV had not continued pursuing certain creator-related outreach because OSV understood that Defendants were going to lead that aspect of the venture.

62. Mr. Baum also advised Defendants that OSV had deferred discussions concerning key personnel who would be hired to operate and develop the league because OSV believed that the parties should evaluate OSG's staffing needs and potential candidates together as a team.

63. On April 23, 2024, Wesley Bryan informed Mr. Baum that he had meetings scheduled concerning a potential opportunity involving the PGA TOUR and told Mr. Baum to "stay tuned" because he would "loop [him] in" during the coming weeks.

64. Mr. Baum and Mr. Gilliland thereafter engaged in additional communications concerning OSG. During those communications, Defendants continued to express interest in OSG and encouraged Mr. Baum to continue developing and disclosing details of the venture.

65. On September 20, 2024, Mr. Baum emailed Defendants additional confidential information concerning the proposed league structure, events, purses, ownership structure, and

content strategy. Mr. Baum also advised Defendants that OSV had secured initial capital for the venture.

66. The proposed ownership structure contemplated that Bryan Bros Golf, Mr. Gilliland, and Mr. Baum would hold equity units and board seats in the league.

67. Mr. Baum also informed Defendants that OSV had engaged in promising initial discussions with potential league or event sponsors and had retained experienced outside counsel to prepare proposed team and league structuring documents. OSV incurred those expenses to accelerate the parties' development of the venture.

68. On or about November 18, 2024, Mr. Baum spoke with Defendants regarding the September 20 email. Mr. Gilliland represented that he and Mr. Bryan had spent hours discussing the venture's structure, and were "very excited to continue."

69. On December 5, 2024, Mr. Baum and Wesley Bryan spoke concerning OSG. Later that day, Mr. Gilliland texted Mr. Baum to schedule a follow-up discussion regarding "equity breakdowns and overall concepts."

70. Mr. Baum provided his availability for the follow-up discussion and stated that Wesley Bryan had advised him that Defendants would provide a deck or written summary of their counterproposal.

71. On December 9, 2024, Mr. Baum emailed Defendants additional detailed plans for OSG, including ones addressing ownership structure, revenue sharing, and strategic partnerships.

72. On December 17, 2024, Mr. Baum advised Mr. Gilliland that OSV could not "sit idle much longer," requested confirmation within the next several days whether Defendants intended to proceed with the league, and explained that the parties needed to have a memorandum of understanding in place before the end of the year.

73. In response, Mr. Gilliland told Mr. Baum that he and Wesley Bryan were "very in on this league" and that the other prospective participants had agreed to participate in a group call concerning the venture. Mr. Gilliland concluded, "In short, we are in," and stated that he would follow up regarding the timing of the group call.

74. Mr. Gilliland thereafter represented that he would participate in a call with the "full team" on December 23, 2024.

75. On January 3, 2025, Mr. Baum emailed Defendants to inquire about the status of their commitment to OSG.

76. On January 7, 2025, Mr. Gilliland responded that he had participated in a large call with leading golf content creators, that the call had ended "in a good spot," and that it likely made sense to invite Mr. Baum to speak with the participants collectively.

77. Defendants' repeated representations of interest and continued participation caused OSV and Mr. Baum to continue sharing confidential information, developing the venture, devoting time and resources to OSG, and refraining from pursuing other potential partners or opportunities while awaiting Defendants' participation and proposed counteroffer.

**<u>Defendants' LIV-Related Activities and Continued Representations to OSV</u>**

78. In or about early 2025, Defendants began participating in or pursuing golf content and business opportunities involving LIV Golf.

79. On April 2, 2025, after learning of an upcoming collaboration involving Defendants and LIV Golf, Mr. Baum emailed Defendants regarding that collaboration.

80. Mr. Gilliland responded that he would "absolutely love to re-engage" with Mr. Baum, that Defendants remained interested in formulating a venture, and that the LIV event was

merely a one-time creator event for which Defendants had been contacted by the producing organization.

81. On April 7, 2025, Mr. Gilliland told Mr. Baum that he and Mr. Bryan had recently discussed OSG with "the group" and remained interested in the venture. Mr. Gilliland further represented that Defendants had spoken with several groups about participating in other golf ventures but that OSV was the only such group with which they remained in discussions.

82. The LIV content referenced by Mr. Gilliland became a series of golf matches known as "LIV Duels." As of October 21, 2026, the five videos in the series had collectively accumulated approximately 14.1 million views on YouTube: 3.1 million for "The Duels Miami," 2.9 million for "The Duels Virginia," 6 million for "The Duels Dallas," 1 million for "The Duels: UK," and 1.1 million for "The Duels Finale."

**Defendants Engaged in Wrongdoing and Violated Their Contractual, Statutory, and Common-Law Obligations to OSV**

83. In March 2026, Mr. Baum learned that Defendants had developed and were promoting a golf venture known as Your Golf Tour ("YGT").

84. Upon information and belief, Defendants developed YGT after obtaining access to the OSG Business Plan and OSV's additional Confidential Information and while continuing to represent to Mr. Baum that they remained interested in pursuing OSG with him.

85. YGT is based, in substantial part, on the material components of the confidential business architecture of OSG that OSV disclosed to Defendants, including:

a. the integration of team and individual golf competitions;
b. teams composed of golf content creators and professional golfers;
c. concepts concerning the number, size, and composition of teams;
d. a competition model designed to function as both competitive golf and entertainment content;

e. sponsorship and media-revenue opportunities; and

f. a strategy for expanding the venture, its teams, and its audience.

86. On March 26, 2026, Wesley Bryan appeared on the Smylie Show, a golf-focused podcast, and discussed YGT. During that interview, Mr. Bryan stated that he and others had previously "gone down some roads trying to explore" a similar venture and had begun "pretty serious conversations" approximately one year earlier about bringing the concept together.

87. OSV's allegations of unauthorized use and disclosure are based on Defendants' access to the OSG Business Plan and subsequent confidential disclosures; their discussions of the venture with other individuals and entities; the discussions described by Wesley Bryan on the Smylie Show; and the similarities between the venture disclosed by OSV and the ventures subsequently promoted by Defendants.

88. Mr. Bryan's description on the Smylie Show of the timing of prior discussions overlaps with the period during which Defendants were working with OSV, receiving its confidential and trade secret information and representing to Mr. Baum that they remained committed to developing OSG with him.

89. Upon information and belief, Defendants disclosed OSV's Confidential Information to third parties who were not authorized recipients under the NDAs and used that information for purposes outside the contemplated arrangement with OSV.

90. Upon information and belief, Defendants used OSV's Confidential Information and trade secrets to accelerate the development, structuring, promotion, sponsorship, and commercialization of LIV Duels, YGT, and related golf ventures.

91. Defendants' disclosure and use of OSV's Confidential Information for independent and competing ventures violated the express limitations imposed by the NDAs.

92. Defendants did not obtain OSV's permission to use its Confidential Information or trade secrets for LIV Duels, YGT, or any competing or independent venture.

93. Defendants did not compensate OSV for their use of its Confidential Information or trade secrets and excluded OSV and Mr. Baum from the ventures and commercial opportunities that their information helped create.

94. YGT is a successful venture built upon OSV's confidential and trade secret information. As of October 21, 2026, YGT had published coverage of its first two events, held at Pursell Farms in Sylacauga, Alabama, and Rams Hill in Borrego Springs, California. YGT's inaugural event had garnered approximately 15.5 million combined views across its three YouTube videos, and its second event had garnered approximately 11 million combined views across its three YouTube videos.

95. Upon information and belief, Defendants have received or expect to receive substantial advertising, sponsorship, media, ownership, merchandise, and other revenues and benefits from LIV Duels, YGT, and related ventures.

96. Based upon information and belief, YGT's partners include: CELSIUS, Takomo Golf, For Wellness, The Back Nine Golf, etc., and venues such as: the Pursell Farms golf course in Sylacauga, Alabama; Rams Hill Golf Club in Borrego Springs, California; Cutalong Golf Course at Tributer Resort in Mineral, Virginia; and the Wynn Golf Club in Las Vegas, Nevada.

97. Defendants' unauthorized use and disclosure of OSV's Confidential Information deprived OSV of the value of its development efforts and impaired its opportunity to commercialize OSG through relationships with creators, professional golfers, sponsors, investors, and established golf organizations.

98. OSV has incurred substantial expenses in developing OSG, preparing and refining the OSG Business Plan, and pursuing prospective participants and commercial relationships.

99. Defendants obtained substantial benefits by using OSV's work, Confidential Information, and trade secrets to develop and commercialize golf entertainment ventures without compensating OSV for the value they received.

## FIRST CLAIM FOR RELIEF
**Breach of Contract**
**(Both Defendants)**

100. OSV incorporates all prior paragraphs and allegations of the Complaint as though set forth fully herein.

101. OSV and Provisions Group entered into the Provisions NDA on March 5, 2024.

102. OSV and Bryan Bros Golf entered into the Bryan Bros NDA on March 6, 2024.

103. The NDAs were supported by the parties' mutual promises to protect confidential information disclosed in connection with the contemplated arrangement. Following execution of the NDAs, OSV provided Defendants with access to the OSG Business Plan and additional confidential information for that limited purpose.

104. In exchange for these benefits and consideration, Defendants agreed, among other things, to safeguard OSV's Confidential Information and restrict its use and disclosure.

105. Specifically, Defendants agreed to protect and safeguard OSV's Confidential Information using at least the same degree of care used to protect their own confidential information, but in no event less than a commercially reasonable degree of care. **Ex. A**, Sec. B(a); **Ex. B**, Sec. B(a).

106. Defendants further agreed not to use OSV's Confidential Information, or permit it to be accessed or used, for any purpose other than the contemplated arrangement or related

transactions between the parties, or otherwise in any manner detrimental to OSV. **Ex. A**, Sec. B(b); **Ex. B**, Sec. B(b).

107. Defendants also agreed not to disclose OSV's Confidential Information except to representatives who needed to know the information for the contemplated arrangement, had been informed of its confidential nature, and were subject to confidentiality obligations no less restrictive than the NDAs. **Ex. A**, Sec. B(c); **Ex. B**, Sec. B(c).

108. In addition, Defendants agreed to be responsible for any breach of the applicable NDA caused by their representatives. **Ex. A**, Sec. B(d); **Ex. B**, Sec. B(d).

109. The NDAs preserved OSV's right, title, and interest in its Confidential Information and expressly provided that disclosure did not grant Defendants any assignment, option, license, or other ownership interest in that information. **Ex. A**, Sec. H; **Ex. B**, Sec. H.

110. OSV performed all obligations required of it under the NDAs by complying with the NDAs and providing Defendants with access to the OSG Business Plan and OSV's other Confidential Information and trade secrets for purposes of the contemplated business arrangement.

111. Upon information and belief, Defendants breached Section B(c) of the NDAs by disclosing OSV's Confidential Information to third parties who were not authorized recipients under the NDAs and were not subject to confidentiality obligations no less restrictive than the NDAs. **Ex. A**, Sec. B(c); **Ex. B**, Sec. B(c).

112. Upon information and belief, Defendants breached Section B(b) of the NDAs by using, and permitting others to access and use, OSV's Confidential Information for purposes outside the contemplated arrangement with OSV, including to develop, structure, promote, sponsor, and commercialize LIV Duels, YGT, and related golf ventures. **Ex. A**, Sec. B(b); **Ex. B**, Sec. B(b).

113. Upon information and belief, Defendants further breached Section B(b) of the NDAs by using OSV's Confidential Information to advance independent and competing golf ventures in a manner detrimental to OSV. **Ex. A**, Sec. B(b); **Ex. B**, Sec. B(b).

114. Upon information and belief, Defendants breached Sections B(a) and B(d) of the NDAs by failing to safeguard OSV's Confidential Information with commercially reasonable care and by causing, permitting, or failing to prevent unauthorized access, use, or disclosure by their representatives. **Ex. A**, Sec. B(a), (d); **Ex. B**, Sec. B(a), (d).

115. Defendants did not obtain OSV's authorization to use or disclose its Confidential Information for LIV Duels, YGT, or any other independent or competing venture.

116. Defendants' breaches of the NDAs are without legal defense or justification.

117. As a direct and proximate result of Defendants' breaches of their respective NDAs, OSV has suffered damages, including lost profits, impairment of its opportunity to commercialize OSG, and loss of the value of its confidential development work, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
**Violations of the federal Defend Trade Secrets Act ("DTSA")**
**18 U.S.C. § 1836 *et seq.***
**(Both Defendants)**

118. OSV incorporates all prior paragraphs and allegations of the Complaint as though set forth fully herein.

119. OSV possesses and owns trade secrets relating to OSG, including the confidential selection, combination, development, and implementation of OSG's competition structure, team composition, ownership model, content and distribution strategy, fan-engagement model, sponsorship and revenue strategy, growth plan, prospective participants, potential strategic

relationships, financial information, and implementation plan (collectively, "OSV's Trade Secrets").

120. These materials and information are not generally known or readily accessible to the public or to OSV's competitors, and they relate to OSV's products and services that were intended to be offered in interstate and foreign commerce.

121. OSV takes reasonable measures to keep these materials and information secret, including, but not limited to, restricting disclosure to selected persons for the specific purpose of evaluating and pursuing a potential business arrangement concerning OSG and requiring Defendants to execute the NDAs before receiving the OSG Business Plan and related nonpublic information.

122. OSV's confidential information constitutes trade secrets under the DTSA because they are not generally known to the public or to other persons who could obtain economic value from their disclosure or use, are not readily ascertainable by such persons through proper means, and have independent economic value because they are secret.

123. For example, a person seeking to create a competing golf entertainment venture would obtain a significant and unfair competitive advantage from access to OSV's Trade Secrets because that information would provide a developed league architecture, competition and ownership structure, content and distribution strategy, sponsorship and revenue strategy, prospective participants, and potential relationships with established golf organizations.

124. OSV spent substantial time, effort, resources, and industry expertise developing OSV's Trade Secrets. Disclosure or use of that information by a competitor would eliminate or significantly reduce the time, expense, industry outreach, and business-development efforts

necessary for the competitor to independently develop and commercialize a competing golf entertainment venture.

125. Upon information and belief, Defendants misappropriated OSV's Trade Secrets by disclosing them, without OSV's authorization or consent, to third parties who were not authorized recipients under the NDAs and were not subject to confidentiality obligations no less restrictive than the NDAs.

126. Upon information and belief, Defendants further misappropriated OSV's Trade Secrets by using, and permitting others to use, that information without OSV's authorization or consent to develop, structure, promote, sponsor, and commercialize LIV Duels, YGT, and related golf ventures.

127. Upon information and belief, Defendants' use and disclosure of OSV's Trade Secrets enabled Defendants to accelerate the development and commercialization of LIV Duels, YGT, and related golf ventures and improved their ability to compete against OSV for participants, sponsors, investors, audiences, and relationships with established golf organizations.

128. Defendants knew or had reason to know that the information they disclosed and used constituted OSV's Trade Secrets and that they did not have authority to disclose or use that information for LIV Duels, YGT, or any other independent or competing venture. Defendants further knew or had reason to know that they had acquired knowledge of OSV's Trade Secrets under circumstances giving rise to duties to maintain the secrecy of, and limit the use of, that information.

129. As a direct and proximate result of Defendants' wrongful conduct, OSV has suffered financial loss, loss of the confidentiality and value of its Trade Secrets, lost profits, lost business opportunities, and other damages in an amount to be proven at trial. Among other harms,

Defendants' misappropriation and disclosure of OSV's Trade Secrets impaired OSV's ability to commercialize OSG and pursue business relationships with content creators, professional golfers, sponsors, investors, and established golf organizations.

130. Defendants have also obtained substantial benefits and unjust enrichment through their unauthorized disclosure and use of OSV's Trade Secrets, in an amount to be proven at trial.

131. Alternatively, OSV is entitled to damages measured by a reasonable royalty for Defendants' unauthorized disclosure and use of OSV's Trade Secrets.

132. Defendants' aforementioned conduct violated the DTSA.

133. Defendants' misappropriation was willful and malicious because, upon information and belief, they knowingly used and disclosed OSV's Trade Secrets for independent commercial purposes despite their express obligations to preserve their secrecy and limit their use. OSV therefore seeks exemplary damages and reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(C)–(D).

## <u>THIRD CLAIM FOR RELIEF</u>
**Violations of the Colorado Uniform Trade Secrets Act ("CUTSA")**
**C.R.S. §§ 7-74-101 *et seq.***
**(Both Defendants)**

134. OSV incorporates all prior paragraphs and allegations of the Complaint as though set forth fully herein.

135. OSV possesses and owns trade secrets relating to OSG, including the confidential selection, combination, development, and implementation of OSG's competition structure, team composition, ownership model, content and distribution strategy, fan-engagement model, sponsorship and revenue strategy, growth plan, prospective participants, potential strategic relationships, financial information, and implementation plans.

136. These materials and information are not generally known or readily accessible to the public or to OSV's competitors.

137. OSV takes reasonable measures to keep these materials and information secret, including, but not limited to, restricting disclosure to selected persons for the specific purpose of evaluating and pursuing a potential business arrangement concerning OSG and requiring Defendants to execute the NDAs before receiving the OSG Business Plan and related nonpublic information.

138. OSV's confidential information constitutes trade secrets under the CUTSA because OSV derives independent economic value from this information not being generally known to the public.

139. OSV has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, and the disclosure to or use of this information by a competitor of OSV would cause irreparable harm to OSV. Moreover, if a competitor were to improperly obtain access to such information, it would eliminate or significantly reduce the time and expense for the competitor to independently create competing products and services.

140. Upon information and belief, Defendants misappropriated OSV's Trade Secrets by disclosing them, without OSV's express or implied consent, to third parties who were not authorized recipients under the NDAs and were not subject to confidentiality obligations no less restrictive than the NDAs.

141. Upon information and belief, Defendants further misappropriated OSV's Trade Secrets by using, and permitting others to use, that information without OSV's express or implied consent to develop, structure, promote, sponsor, and commercialize LIV Duels, YGT, and related golf ventures.

142. Upon information and belief, Defendants' use and disclosure of OSV's Trade Secrets enabled Defendants to accelerate the development and commercialization of LIV Duels, YGT, and related golf ventures and improved their ability to compete against OSV for participants, sponsors, investors, audiences, and relationships with established golf organizations.

143. Defendants knew or had reason to know that the information they disclosed and used constituted OSV's Trade Secrets and that they did not have authority to disclose or use that information for LIV Duels, YGT, or any other independent or competing venture. Defendants further knew or had reason to know that they had acquired knowledge of OSV's Trade Secrets under circumstances giving rise to duties to maintain the secrecy of, and limit the use of, that information.

144. As a direct and proximate result of Defendants' wrongful conduct, OSV has suffered financial loss, loss of the confidentiality and value of its Trade Secrets, lost profits, lost business opportunities, and other damages in an amount to be proven at trial. Among other harms, Defendants' misappropriation and disclosure of OSV's Trade Secrets impaired OSV's ability to commercialize OSG and pursue business relationships with professional golfers, content creators, sponsors, investors, and established golf organizations.

145. Defendants have also obtained substantial benefits and unjust enrichment through their unauthorized disclosure and use of OSV's Trade Secrets, in an amount to be proven at trial.

146. Alternatively, OSV is entitled to damages measured by a reasonable royalty for Defendants' unauthorized disclosure and use of OSV's Trade Secrets.

147. Defendants' aforementioned conduct violated CUTSA.

148. Defendants' misappropriation was attended by circumstances of malice or willful and wanton disregard of OSV's rights, supporting exemplary damages under C.R.S. § 7-74-104(2).

Defendants' misappropriation was also willful and malicious, supporting an award of reasonable attorneys' fees under C.R.S. § 7-74-105.

**FOURTH CLAIM FOR RELIEF**
**Promissory Estoppel**
**(Both Defendants)**

149. OSV incorporates all prior paragraphs and allegations of the Complaint as though set forth fully herein.

150. Separate from their obligations under the NDAs, Defendants repeatedly promised and represented to OSV that they were "in" on OSG, remained committed to pursuing the proposed golf venture with OSV, and intended to continue working with OSV and Mr. Baum to develop and commercialize the venture.

151. Among other things, Defendants represented that leading golf content creators were "all in" on OSG; that Defendants were "very excited to continue"; that Defendants were "very in on this league"; that they had spent substantial time working through the venture's structure; and that they intended to include Mr. Baum in collective discussions with prospective participants.

152. Defendants made these promises and representations while requesting, receiving, and discussing increasingly detailed information concerning OSG's proposed venture structure, events, purses, ownership structure, content strategy, economics, prospective participants, and potential commercial relationships.

153. Defendants reasonably should have expected that their promises would induce OSV and Mr. Baum to continue developing OSG, disclosing OSV's Confidential Information, devoting time and resources to the venture, and refraining from pursuing other potential partners and commercial opportunities.

154. In reasonable reliance on Defendants' promises concerning their continued participation in developing OSG, OSV, through Mr. Baum, continued development work, devoted additional time and resources to the venture, deferred certain participant outreach and staffing discussions, and delayed pursuing other potential partners while awaiting Defendants' proposed counteroffer and group discussions.

155. OSV's reliance was detrimental because Defendants used the additional time and information obtained through the parties' continued dealings to pursue LIV Duels, YGT, and related golf ventures without OSV, while OSV lost time, resources, and opportunities to pursue the venture through other partners.

156. Defendants failed to honor their promises by working behind Mr. Baum's and OSV's back, excluding them from LIV Duels, YGT, and related commercial opportunities, and by using OSV's Confidential Information and development efforts for independent and competing ventures.

157. Defendants' promises must be enforced to prevent injustice.

158. As a direct and proximate result of Defendants' failure to honor their promises, OSV has suffered damages, including development expenses, wasted time and resources, and lost business opportunities, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, OSV requests that the Court grant the following relief:

a. Award OSV damages incurred as a result of Defendants' misconduct;

b. Award OSV exemplary damages under 18 U.S.C. § 1836(b)(3)(C); and C.R.S. § 7-74-104(2);

c. Award OSV damages for unjust enrichment in an amount to be proven at trial;

d. Award OSV allowable costs, disbursements, and penalties in this action as the Court deems proper;

e. Award OSV all reasonable attorneys' fees pursuant to contract and to the extent such may be allowable by law;

f. Award OSV pre- and post-judgment interest; and

g. Award OSV such other and further relief as the Court deems just and proper.

Dated: October 26, 2026

Respectfully submitted,

FISHER & PHILLIPS LLP

*s/ Timothy Kratz*

Timothy Kratz
David C. Roth
Liana J. Brown
FISHER & PHILLIPS LLP
1125 17th Street, Suite 2400
Denver, CO 80202
Telephone: 303-218-3650
Fax: 303-218-3651
tkratz@fisherphillips.com
droth@fisherphillips.com
ljbrown@fisherphillips.com

*Attorneys for Plaintiff*